UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
EZEQUIEL GONZALEZ,
                                    :
            Plaintiff,                          **MEMORANDUM & ORDER**
                                    :
      -against-                                 **13cv3629 (PKC) (MHD)**
                                    :
SCALINATELLA, INC., d/b/a,
Scalinatella Ristorante, et al.,   :

            Defendant.              :
----------------------------------x
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


     Plaintiff Ezequiel Gonzalez commenced this lawsuit under the
Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and
the New York Labor Law ("NYLL"), alleging, inter alia, underpayment
of wages and illegal tip retention. By letter dated November 24,
2014, the parties informed the District Court that they had
successfully negotiated a settlement of plaintiff's claims and
were attempting to come to an agreement on plaintiff's attorneys'
fees. Failing to do so, plaintiff has moved for an award of fees.
For the reasons that follow, plaintiff's application is granted in
part and denied in part.

## PROCEDURAL BACKGROUND

On May 30, 2013, plaintiff filed a complaint "on behalf of himself and others similarly situated" against defendants Scalinatella, Inc., doing business as Scalinatella Ristorante, and related principals Alfio Ruocoo and Luigi Russo. (Compl. p. 1 & ¶¶ 5-6). Plaintiff alleged, inter alia, that defendants had violated the FLSA by refusing to pay the minimum wage and overtime compensation and failing to properly apprise the employees of their rights, and had violated the NYLL by refusing to pay overtime compensation and failing to provide various notices required under state law. (Id. at ¶¶ 41-45, 51-56).

On October 3, 2013, plaintiff moved for conditional certification of the lawsuit as a representative collective action under the FLSA "on behalf of all tipped employees, including waiters, runners, busboys, and bartenders employed by defendants within the last six years." (Memorandum & Order dated November 22, 2013 [docket no. 35]; see also Pl.'s Mot. to Conditionally Certify Class [docket nos. 17-19]). On November 22, 2013, Judge Castel granted that application and ordered defendants to produce names and contact information for the relevant pool of tipped employees (Memorandum & Order dated November 22, 2013), and, on December 9, 2013, the court approved the proposed notice and opt-in form. (See

2

Endorsed order dated December 9, 2013 [docket no. 40]). No additional plaintiffs joined the suit.

Aside from a number of discovery disputes (<u>see</u> docket nos. 15-16, 26, 28-34, 44-46), the only other significant pre-settlement activity was plaintiff's motion to certify the class. (Docket nos. 47-50). Ultimately, Judge Castel denied that motion on the basis of plaintiff's failure to demonstrate "that the class is sufficiently numerous that joinder of all members is impracticable." (Order dated August 28, 2014 [docket no. 67]).

Shortly thereafter, we scheduled a settlement conference with the parties, which was held on October 8, 2014. Subsequently, on November 24, 2014, the parties jointly wrote to the District Judge, informing him that the parties had "reached an agreement in principle as to settlement of Plaintiff's claims" and "are in the process of negotiating an agreement for Plaintiff's attorneys' fees." (Letter dated November 24, 2014 [docket no. 70]). They stated that "[s]hould the parties fail to reach an agreement on the amount of Plaintiff's attorneys' fees, Plaintiff will submit a fee application to the Court by December 31, 2014." (<u>Id.</u>). That application indeed followed. (Docket nos. 72-74).

**PLAINTIFF'S APPLICATION**


On December 31, 2014, plaintiff filed an application for $81,252.50 in attorneys' fees and $1,150.60 in out-of-pocket expenses. (Docket nos. 72-74). Plaintiff asserts that the requested sum -- a "lodestar" figure representing 249.1 attorney and paralegal hours multiplied by various hourly rates -- is reasonable under the case law governing fee awards. (See Pl.'s Mem. 3). Plaintiff attaches a declaration and time-sheets embodying the foundational evidence for his request. (Docket no. 73).


Defendants oppose this application. (Docket no. 79). They argue that plaintiff's counsel's hourly rates and the time purportedly spent on this litigation are unreasonable, and also assert that any lodestar must be reduced, inter alia, in light of the limited scope of plaintiff's recovery. (Defs.' Opp. Mem. 2-14). Defendants also contend that "[p]laintiff's litigation costs are not well documented and must be reduced." (Id. at 15).


Plaintiff counters each of defendants' arguments to varying degrees and also increases his sought-after award by $2,520.00, to account for counsel's work on the memorandum in reply. (Pl.'s Reply Mem. 9).

For the reasons that follow, we grant plaintiff's motion in the sum of $48,366.50 in attorneys' fees and $1,150.60 in disbursements.

**ANALYSIS**

I.   Defendants' Introductory Arguments

We will set forth the general standards applicable to FLSA and NYLL fee applications -- that is, the so-called lodestar figure -- below. See infra 34-35. Although courts ordinarily derive the lodestar amount as an initial matter, for clarity's sake, we begin our assessment of this application with several of defendants' other arguments in opposition to plaintiff's motion, including (1) that plaintiff's counsel's award must be roughly proportionate to plaintiff's recovery under the settlement agreement, (2) that any award must be reduced in light of plaintiff's "lack of success," (3) that plaintiff's alleged failure to properly comply with Rule 26 of the Federal Rules of Civil Procedure warrants precluding him from any monetary recovery, including fees, and (4) that the timing of plaintiff's agreement to settle reflects bad faith, and that therefore recovery of fees for time spent in the later stages of litigation is inappropriate. We take these arguments in turn.

a. <u>Plaintiff's Counsel's Award Need Not be Proportionate to
their Client's Recovery Under the Settlement Agreement</u>


Defendants press that we should "exercise [our] discretion
and reduce the excessive and unreasonable fees sought by Plaintiff
to no more than $7,500.00 in light of the disproportionately low
amount of damages Plaintiff recovered." (Defs.' Opp. Mem. 5). Said
another way, defendants contend that "an across-the-board
percentage cut in the number of hours claimed and/or in the amount
is warranted because the amount of Plaintiff's settlement (a mere
$7,500.00) is grossly disproportionate to the amount sought in
attorney's fees (approximately $81,252.50)," and they point out
that "Plaintiff's damages amount to approximately 12.7% of the
amount he seeks in attorneys' fees." (<u>Id.</u> at 4-5).


Defendants cite two non-FLSA cases for this specific
proposition, <u>Levy v. Powell</u>, 2005 WL 1719972, *6 (E.D.N.Y. July
22, 2005), and <u>Morris v. Eversley</u>, 343 F. Supp. 2d 234, 246
(S.D.N.Y. 2004). (<u>Id.</u> at 5). However, while both of these decisions
assess the reasonableness of a fee award through, <u>inter alia</u>, a
comparison of the requested award and the success obtained for the
client, they each also emphasize the limited utility of this type
of analysis. <u>See</u> <u>Levy</u>, 2005 WL 1719972 at *6 (citing <u>Hine v.
Mineta</u>, 253 F. Supp. 2d 464, 467 (E.D.N.Y. 2003), for the "strong

presumption that the 'lodestar' calculation represents the 'reasonable' fee, even when that calculation is disproportionate to the amount of damages awarded to the successful plaintiff"); Morris, 343 F. Supp. 2d at 246 ("[C]ourts have expressly rejected a per se 'proportionality' rule.").

Indeed, the clear thrust of case law in this Circuit rejects the need for an FLSA attorney's award of fees to be proportional to the success achieved for the client. See, e.g., Guallpa v. N.Y. Pro Signs Inc., 2014 WL 2200393, *11 (S.D.N.Y. May 27, 2014) ("[T]he legal fees to be awarded need not be proportional to the plaintiff's recovery in FLSA cases because the award of a reasonable fee vindicates Congressionally identified policies and rights.") (internal quotation omitted); Merino v. Beverage Plus Am. Corp., 2012 WL 4468182, *1 (S.D.N.Y. Sept. 25, 2012) ("In FLSA cases the attorney's fees need not be proportional to the damages plaintiffs recover.") (citing cases); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 511-12 (S.D.N.Y. 2011) ("While the requested attorneys' fees exceed plaintiffs' own recovery in the case, that is no matter. In FLSA cases . . . the attorneys' fees need not be proportional to the damages plaintiffs recover.") (citing cases); accord Mendez v. Radec Corp., 907 F. Supp. 2d 353, 358 n.4 (W.D.N.Y. 2012); Estrella v. P.R. Painting Corp., 596 F.

Supp. 2d 723, 727 (E.D.N.Y. 2009); J.S. Nicol, Inc. v. Peking Handicraft, Inc., 2008 WL 4613752, *9 (S.D.N.Y. Oct. 17, 2008).

That policy accords with the FLSA's objective of "secur[ing] legal representation for plaintiffs whose wage and hour grievance were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements." Estrella, 696 F. Supp. 2d at 727. To hold to the contrary would "undercut the goal of the fee statutes to encourage attorneys to represent rights victims even in small cases, because it would generate fees so low that they would attract only lawyers willing, in effect, to appear pro bono or to accept being vastly undercompensated." Tucker v. City of New York, 704 F. Supp. 2d 347, 359 n.10 (S.D.N.Y. 2010); see also City of Riverside v. Rivera, 477 U.S. 561 (1986) ("A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.").[1]

---

[1] In fairness to defendants' argument on this point, we note that at least one judge in this district has -- while deeming a lack of proportionality "not itself improper" -- found the disproportionate fee request of Mr. Lee and his co-counsel "notable nonetheless." Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd., 2014 WL 2115143, *3 (S.D.N.Y. May 20, 2014); see also Zhao Hui Chen v. Jin Holding Grp. Inc., 2012 WL 279719, *2-3 (S.D.N.Y. Jan. 31, 2012) (awarding Mr. Lee and his co-counsel $68,131.14 in fees and expenses and their lone client a judgment of $4,665.98, while simultaneously expressing some doctrinal skepticism about the argument "that there need not be proportionality between the award (here, tiny) and the fee (here, very large)").

b. <u>Plaintiff's Counsel's Award Must be Reduced in Light of</u>
<u>their Unsuccessful Motion for Class Certification</u>

Defendants raise another preliminary issue that is related to
their proportionality argument and somewhat more compelling: that
any fee award should be reduced given "Plaintiff's lack of success
on his claims." (Defs.' Opp. Mem. 2 (quoting <u>Farrar v. Hobby</u>, 506
U.S. 103, 114 (1992); <u>Barfield v. New York City Health & Hosps.</u>
<u>Corp.</u>, 537 F.3d 132, 152 (2d Cir. 2008); <u>Peacock v. Schwartz</u>, 154
F. Supp. 2d 428, 430 (E.D.N.Y. 2001)); <u>see also</u> Defs.'Opp. Mem.
10-11).

In urging that we should cut down plaintiff's fees, defendants
first generally describe the back-and-forth history of the
parties' settlement negotiations, concluding that "Plaintiff
finally settled his individual claim for $7,500.00 . . . which in
comparison to the relief demanded of $59,003.23 -- is not a highly
successful outcome." (Defs.' Opp. Mem. 4).[2]

---

[2] Plaintiff rightly chastises defendants for disclosing the course of these
negotiations -- including specific monetary demands -- as "confidential
communication[s] during settlement discussions subject to FRE 408." (Pl.'s
Reply. Mem 3. n.1). <u>See</u>, <u>e.g.</u>, <u>Siracuse v. Program for the Development of Human</u>
<u>Potential</u>, 2012 WL 1624291, *20 (E.D.N.Y. Apr. 30, 2012) ("As an initial matter,
defendant's reference to the settlement discussions and amounts offered is
inappropriate.").

Plaintiff counters that "the relief Class Counsel obtained is not only limited to the $7,500 obtained for Plaintiff, but there is additional value in the fact that Defendants have been taught a lesson regarding their wage and hour policies." (Pl.'s Reply Mem. 2). Plaintiff adds that the $7,500 settlement was accepted "based on several factors, including (i) that settlement afforded Plaintiff immediate monetary recovery instead of having to wait until trial and obtaining and collecting on a post-trial judgment, and (ii) Defendants' financial condition and ability to satisfy a greater judgment." (Id. at 2-3).

The ultimate recovery aside, defendants press for three specific reductions in the fee award. These relate to time spent on (1) the unsuccessful motion for Rule 23 certification, (2) the successful application for conditional class certification, and (3) various discovery applications. (Defs.' Opp. Mem. 10-11).

With respect to defendants' argument on the time spent on the certification motion, their citation to the Second Circuit's decision in Barfield is particularly salient. In the underlying district court case, Judge Rakoff -- while denying the plaintiff's application to certify the suit as a collective action -- granted summary judgment for the plaintiff, a nursing assistant who had sued her former employer under the FLSA. Barfield, 537 F.3d at

10

135, 137. The court awarded the plaintiff a total of $1,774.50, consisting of $887.25 in compensatory overtime and an equal amount in liquidated damages. Id. at 139.

Barfield also sought attorney's fees in the amount of $340,375.00, which Judge Rakoff cut down to $58,229.29. Id. at 139-40. The court "rejected defendants' request to eliminate from consideration all time spent by [plaintiff's] counsel in [unsuccessfully] seeking to certify the case as an FLSA collective action, finding that plaintiff's certification was inextricably intertwined with her successful motion for summary judgment as both involved a common core of facts and a related legal theory." Id. (internal quotations omitted). Nevertheless,

> the district court invoked its authority to adjust the lodestar to reflect . . . that plaintiff's primary aim in this litigation, as reflected in both the complaint and the first four months of litigation . . . was collective action certification. Because plaintiff (and her counsel) had failed in this objective, the district court concluded that [plaintiff] had achieved only limited success in the litigation as a whole, which justified a 50 percent reduction in the lodestar.

Id. at 140 (internal quotations omitted).

The Second Circuit emphatically approved of this reduction. First, the Court noted that it was generally "mindful of the Supreme Court's observation that 'the most critical factor' in a

11

district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." Id. at 152. More specifically, the Second Circuit stated that "[i]n this respect the district court got it exactly right: the reasonableness of the attorney's fees incurred linked directly to the ability to maintain the case as an FLSA collective action." Id. at 153. According to the Circuit, "not reducing the fee award in these circumstances would pose two risks: (a) decreasing the incentive for plaintiffs' lawyers vigorously to litigate collective action certification, and (b) encouraging plaintiffs' lawyers to file collection action-based claims even where there is little basis for doing so." Id. at 152 (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)); accord Torres v. Gristede's Operating Corp., 519 F. App'x 1, 5 (2d Cir. 2013) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained.") (quoting and applying Farrar, 506 U.S. at 114, to FLSA cases) (internal quotations omitted).

In the application before us, as in Barfield, plaintiff unsuccessfully moved for certification of the lawsuit as a representative action. (See Order dated August 27, 2014). Indeed, plaintiff does not squarely address his failure on this front,

12

instead emphasizing his success on the conditional collective certification. (See, e.g., Pl.'s Reply Mem. 3).


The holding in Barfield and related case law requires us to reduce any fee award to the extent that time claimed was spent on an unsuccessful motion for class certification. Indeed, "[t]o award the full amount would be tantamount to awarding a fee as if plaintiff had prevailed on [his] collective action motion." Barfield v. New York City Health & Hosps. Corp., 2006 WL 2356152, *3 (S.D.N.Y. Aug. 11, 2006). Nevertheless, we deem it appropriate to depart from Barfield in the manner in which that court reduced the award. Here, we are not presented with a class certification motion "inextricably intertwined" with the rest of the litigation. See Barfield, 537 F.3d at 139-40. There was no motion for summary judgment filed on similar or any grounds. Indeed, subsequent to Judge Castel's denial of the class motion, the very next actions in the case were the scheduling and holding of a settlement conference before the undersigned, which was shortly thereafter followed by the agreement to settle for $7,500 exclusive of fees. (See docket nos. 68 & 70).


Therefore, we need not undertake the type of reduction at issue in Barfield -- a blunt, across-the-board percentage cut roughly representative of the scale of the plaintiff's failed

litigation strategies. <u>Barfield</u>, 537 F.3d at 140. Instead, for purposes of lodestar, we will identify the line-items in counsel's records attributable to the unsuccessful motion to certify and reduce the award accordingly. <u>Accord</u> <u>Hensley</u>, 461 U.S. at 436-37 ("There is no precise rule or formula for making [fee reduction] determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment."); <u>Custodio v.</u> <u>Am. Chain Link & Constr., Inc.</u>, 2014 WL 116147, *12-13 (S.D.N.Y. Jan. 13, 2014) (citing <u>Barfield</u> and deducting 25.75 hours from the lodestar calculation in light of "the attorneys' time for the unsuccessful class certification motion"). The number of hours expended by plaintiff's counsel in litigating this motion is as follows: (1) C.K. Lee: 18.9 hours; (2) Anne Seelig: 9.4 hours; (3) Shanshan Zheng: 38.9 hours; (4) Luis Arnaud: 1.0 hour. (Ex. A to Lee Decl.).

We turn now to defendants' related targeting of plaintiff's counsel's successful efforts to conditionally certify the class. Defendants write as follows:

> Although Plaintiff was successful on the motion, the dissemination of notice to putative class members did not result in a single opt-in consenting to join the case. Defendants expended numerous hours defending against the motion for conditional certification of the

14

> class, for which no additional claims were brought by
> Plaintiff or any other individual.

(Defs.' Opp. Mem. 11). For his part, plaintiff counters that "as
Defendants[] acknowledge, conditional collective certification was
granted, and notices issued to the class. The fact that no
collective class members filed claim forms is beyond our control."
(Pl.'s Reply Mem. 3).

It is telling that neither party submits case law either for
or against the proposition that successfully litigating a
conditional certification motion should be compensable under a fee
award notwithstanding the outcome of the notice period and ultimate
disposition of the collective. Such questions are natural
outgrowths of the "considerable discretion" that "courts are
afforded . . . in determining the amount of attorney's fees in any
given case." Clark v. New York City Health and Hosps. Corp., 2011
WL 10563693, *2 (S.D.N.Y. Aug. 24, 2011). Our role under the FLSA
is to "allow a reasonable attorney's fee to be paid by the
defendant," 29 U.S.C. § 216(b) (emphasis added), which requires
case-by-case assessments of the litigation history.

We see no reason here to reduce plaintiff's award by a measure
related to the conditional certification motion. As plaintiff put
it, "[t]he fact that no collective class members filed claim forms

is beyond our control." (Pl.'s Reply Mem. 3). We note that a number of courts have treated the success -- or lack thereof -- on a motion to conditionally certify an FLSA class as a severable piece of the fee analysis in and of itself (although none of these decisions perfectly mirrors the procedural posture in the case before us now). See, e.g., Dixon v. Zabka, 2013 WL 2391473, *2 (D. Conn. May 23, 2013) ("The work that Plaintiffs' counsel has performed to date, including document discovery, depositions, and obtaining conditional certification, was significant and contributed to the successful resolution of the claims."); West v. Border Foods, Inc., 2007 WL 1725760, *3 (D. Minn. June 8, 2007) (finding that plaintiff's "counsel's lodestar amount should be reduced . . . for fees incurred in its unsuccessful efforts to achieve conditional certification"); Coleman v. Hairston, 1993 WL 541691, *4 (S.D. Ohio Aug. 10, 1993) ("[T]he total award should be relative to the extent of the Plaintiff's success on the merits of the litigation. The Plaintiff . . . won on significant issues . . . . [including] conditional certification of the case as a class action. However, the Plaintiff did not get all the relief she sought.").

Finally, we address defendants' contention that we should reduce plaintiff's award of fees to account for various unsuccessful discovery applications. Defendants call specific

attention to the "approximately eight (8) hours" spent "on a motion to compel discovery submitted on September 18, 2013." (Defs.' Opp. Mem. 10-11). Defendants explain that "[i]n part, this effort was denied, via Court order dated September 24, 2013. The motion was denied particularly with respect to Plaintiff[']s overbroad requests for production of discovery for putative class members who were not parties to the litigation." (Id. at 11). Defendants add that "Plaintiff's request to compel responses to several other document requests were also denied," and that, "[a]cccordingly, fees for th[ose] portions of Plaintiff's application must be redacted." (Id.).

Plaintiff only briefly addresses this issue, stating that "[t]he 'unsuccessful claims' that Defendants' refer to" include "Plaintiff's letter-motion to compel discovery (which Defendants admit was granted in part." (Pl.'s Reply Mem. 8 (emphasis in original)). Plaintiff argues that this application is not "severable" and should not be characterized as an "unsuccessful 'claim[]' dismissed by the Court." (Id.).

Before we turn to our analysis on this subject, we summarize the history of discovery disputes in this case. On August 2, 2013, Judge Castel entered a case management order, setting March 30, 2014 as the end of fact discovery and noting that "[d]ue to the

extended length of the discovery period, the Court does not anticipate granting an extension for any reason." (Order dated Aug. 2, 2013 [docket no. 10]).

Shortly thereafter, on August 16, 2013, plaintiff's counsel submitted a letter to the court, informing Judge Castel of his intention to file a motion for conditional certification and requesting a pre-motion conference accordingly. (Letter from C.K. Lee, Esq. dated Aug. 16, 2013). This letter also included a request to seek "discovery of class information of potential collective members," and provided case law undergirding this application. (Id.). Defendants responded with a letter of their own, on August 21, 2013, in which they opposed plaintiff's discovery request at some length. (Letter from Matthew A. Brown, Esq. dated Aug. 21, 2013). In sum, defendants labelled plaintiff's sought-after discovery as overbroad, premature, unduly intrusive on privacy, and partially irrelevant. (Id.). That same day, Judge Castel ordered that "[t]he parties . . . confer in an effort to agree on so much of the relief sought as possible" and that defendants respond to plaintiff's letter "after having so conferred." (Endorsed order dated Aug. 21, 2013 [docket no 11]).

On September 12, 2013, defendants wrote to the court, informing Judge Castel that the parties had conferred, "but could

not reach an agreement." (Letter from Joseph M. Labuda, Esq. dated Sept. 12, 2013). Defendants continued to oppose, inter alia, an order granting plaintiff permission to conduct "any discovery of class information prior to a decision on plaintiff's anticipated motion for collective action" and largely stood on the same arguments as were contained in their previous opposition letter. (Id.). On September 18, 2013, plaintiff submitted a detailed letter, containing the substance of the disputes between the parties. (Letter from C.K. Lee, Esq. dated Sept. 18, 2013). Presumably, this is the "motion to compel" to which defendants refer in their memorandum in opposition to the current fee request. (See Defs.' Opp. Mem. 10-11). This letter -- to which plaintiff attached defendants' specific objections to plaintiff's interrogatories -- delineated the remaining unresolved issues, including, inter alia, defendants' refusal to provide "wage and hour records of other similar employees," "work schedules for other similar employees," and "contact information of shareholders, managers, directors and supervisors of Defendants." (Id.). Judge Castel then ordered defendants to respond by September 24, 2013 (endorsed order dated Sept. 19, 2013 [docket no. 15]), which defendants did via a point-by-point letter. (See Letter from Joseph M. Labuda, Esq. dated Sept. 24, 2013).

On October 2, 2013, Judge Castel ruled on the various disputes. (Docket no. 16). Plaintiff failed on some of his requests (e.g., records relating to employees other than plaintiff) and succeeded on others (e.g., lists and contact information for managers or supervisors). (Id.).

Subsequently, by letter dated November 4, 2013, defendants informed Judge Castel that, notwithstanding having conferred with plaintiff over their own discovery requests, the parties "could not resolve these issues." (Letter from Joseph M. Labuda, Esq. dated Nov. 4, 2013 [docket no. 26]). Defendants sought from plaintiff, inter alia, federal income tax records, applications for unemployment benefits, and cellphone and personal computer records. (Id.). Plaintiff opposed this application. (See Letter from C.K. Lee, Esq. dated Nov. 7, 2013 [docket no. 28]).

On November 15, 2013, Judge Castel ruled on this set of disagreements, noting that "[t]he frequency of discovery disputes and the inability of the parties to work out their differences are growing tiresome." (See docket no. 29). In any event, like plaintiff in the previous round, defendants failed on some of their requests (e.g., cellphone records) and succeeded on others (e.g., tax records). (Id.).

20

Despite Judge Castel's castigation, on November 21, 2013, plaintiff again wrote to the court about another discovery dispute. (Letter from C.K. Lee, Esq. dated Nov. 21, 2013 [docket no. 30]). Defendants' counsel had apparently informed plaintiff's counsel that, due to a long-running trial, defendants wished to adjourn certain depositions set for dates on which counsel would no longer be available. (Id.). Plaintiff sought to compel those depositions on their originally-scheduled dates, arguing that "Defendants' counsel is not a solo practitioner and may simply have one of the other partners or associates of the firm . . . attend the depositions." (Id.). According to Mr. Lee, "our firm's docket schedule for the entire month of December is booked solid . . . and rescheduling the two depositions for a date in the near future would therefore not be possible." (Id.).

Defendants countered with a letter of their own (see Letter from Matthew A. Brown, Esq. dated Nov. 22, 2013 [docket no. 31]), arguing, inter alia, as follows: "[W]hen I inquired as to whether co-counsel on the case, Mr. Kraselnik . . . could depose the Defendants on other dates, Mr. Lee explained that only he could depose Defendants since he is lead counsel on the case." (Id.). Defendants' counsel argued that plaintiff should not be permitted to "use that reasoning as a sword and a shield, since I explained that Defendants' lead counsel was not available next week due to

21

the unexpected length of his current trial." (Id.). Defendants also noted that, given the March 2014 discovery deadline, "[s]urely Plaintiff's counsel will be available . . . between now and the end of March." (Id.).

Plaintiff replied, arguing that he would be prejudiced if the depositions were delayed, because of an impending deadline to move to amend the complaint or join additional parties. (Letter from C.K. Lee, Esq. dated Nov. 22, 2013 [docket no. 32]). As to the possible availability of a substitute attorney for the depositions, Mr. Lee asserted that, because "Defendants' firm consists of at least eight attorneys[, a]t least one such individual would be available to defend a deposition, which requires much less participation than to conduct a deposition." (Id.). Defendants put in yet another letter as a sur-reply (see Letter from Matthew A. Brown, Esq. dated Nov. 22, 2013 [docket no. 33]), which was shortly thereafter followed by an endorsed order from Judge Castel, permitting the adjournment of depositions to January 17, 2014 and extending the deadline to amend until that date. (Endorsed order dated Nov. 22, 2013 [docket no. 34]).

Subsequent to the conditional certification of the class, dissemination of the approved notice form, and a rejection of defendants' application to reconsider the order on conditional

22

certification (see docket nos. 36-38), plaintiff wrote to Judge Castel, seeking "to compel Defendants' production of the Social Security numbers of all collective class members for whom mailings were returned as undeliverable." (Letter from C.K. Lee, Esq. dated Feb. 5, 2014 [docket no. 44]). Defendants opposed that request (see Letter from Matthew A. Brown dated Feb. 7, 2014 [docket no. 45]), and Judge Castel rejected it, noting that while "[t]he Court has little doubt that social security numbers could provide some benefit in locating some former employees . . . the potential invasion of their privacy interests . . . [is] unwarranted." (Endorsed order dated Feb. 10, 2014 [docket no. 46]). However, the District Judge did permit some expanded discovery in the form of an order directing defendants to produce last known addresses, email addresses, and phone numbers "for individuals whose mailings were returned." (Id.).

Finally, on April 3, 2014, plaintiff again wrote to the court, requesting "clarification" as to whether the March 30, 2014 discovery deadline would be extended due to the then-pending motion to certify the class. (Letter from C.K. Lee, Esq. dated Apr. 3, 2014 [docket no. 61]). Before defendants responded, Judge Castel denied what was clearly a request for an extension, noting that "this Court set a very generous date for the completion of all fact discovery in this case" and that, contrary to the implication

23

of plaintiff's letter, "[t]here is not now nor has there ever been a phase two to fact discovery in this action." (Order dated Apr. 4, 2014 [docket no. 62]).

It is true that our award of fees should "exclude . . . hours dedicated to severable unsuccessful claims," Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997), a principle that has readily been extended to discovery applications properly characterized as "severable" and ultimately "unsuccessful." See, e.g., Crawford v. City of New London, 2015 WL 1125491, *7 (D. Conn. Mar. 12, 2015; Scott v. Niagara Credit Solutions, Inc., 2012 WL 729755, *2 (W.D.N.Y. Mar. 6, 2012); Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc., 2009 WL 5185808, *7 (E.D.N.Y. Dec. 23, 2009). Still, "where, as in this case, the plaintiff's claims 'involve a common core of facts or [are] based on related legal theories,' and are therefore not severable, '[a]ttorney's fees may be awarded for unsuccessful claims as well as successful ones.'" Green v. Torres, 361 F.3d 96, 98 (2d Cir. 2004) (quoting Hensley, 461 U.S. at 435 & Quarantino, 166 F.3d at 425). Given the case-specific nature of this inquiry, the court necessarily "retains substantial discretion to take into account the specific procedural history and facts of each case." Green, 361 F.3d at 99.

In the discovery context, Judge Gold in the Eastern District helpfully framed a fee-reduction request as follows:

> In their opposition, defendants seek a deduction for virtually every hour spent that did not result in evidence used at trial or a motion that led to a favorable ruling by the Court for the plaintiffs. This hour-by-hour analysis is misplaced, and ignores the reality that in the cut and thrust of any protracted litigation, no party wins every skirmish. Attorneys who do not risk the occasional unsuccessful argument most likely are doing their clients a disservice.

Koon, 2009 WL 5185808 at *7.


Like in Koon, defendants here ask us to engage in just such an "hour-by-hour" assessment, in attempts to reduce plaintiff's counsel's fees to account for portions of discovery applications that went ungranted. (Defs.' Opp. Mem. 10-11). Yet, as pointed out by plaintiff (Pl.'s Reply Mem. 8), even the specifically-identified application to compel dated September 18, 2013 was not wholly unsuccessful. Most of the discovery applications -- on either side -- resulted in partial successes, including those stemming from the August and September 2013 letters, both sets of November 2013 letters, and the February 2014 letters. It is not incumbent upon the court -- or, likely, even possible -- to nitpick on the time spent drafting partially successful discovery application letters, in an attempt to classify each individual paragraph or sentence as compensable or not compensable for purposes of this fee application. Each of the above-mentioned

25

disputes reflects quintessential unseverability and, accordingly, despite plaintiff's partial failure on each application, we decline to disregard any hours spent in pursuit of the unsuccessful arguments to the court.

That said, to the slight degree it cuts down on plaintiff's counsel's hours, we will not credit time spent on the April 2014 application to extend deadlines. See supra pp. 23-24.[3] Given the explicitly unmovable discovery cutoff (see docket no. 10), that request was summarily denied and is readily severable from plaintiff's other efforts during discovery. Therefore, we will not order defendants to pay what little money is attributable to fees associated with that application.[4]

---

[3] We note that, although the April 2014 letter was signed by C.K. Lee, Mr. Lee is not claiming any hours associated with its drafting. (See Ex. A to Lee Decl.). Instead, Ms. Seelig appears to have drafted the letter (although her time-sheets erroneously label it as having been drafted on April 4, as opposed to April 3), which was filed by Ms. Perez. Id. We also acknowledge that this letter did succeed in obtaining an adjournment of certain submission deadlines and a conference. (See Order dated Apr. 4, 2014). However, the submitted letter was nearly entirely concerned with the extension request and, notwithstanding what we wrote above, supra pp. 23-26, it is properly construed for our purposes as entirely unsuccessful.

[4] The number of hours attributable to this application is as follows: (1) Anne Seelig: 1.2 hours; (2) Jasmin Perez: 0.2 hours. (Ex. A to Lee Decl.).

c. <u>Plaintiff's Counsel's Award Need not be Reduced Under Rule 26</u>

Defendants also argue that "Plaintiff failed to provide a computation of damages with his Rule 26 Initial Disclosures, and is not entitled to any damages." (Defs.' Opp. Mem. 3). Defendants reiterate this argument elsewhere and assert that "[s]ince Plaintiff never provided a computation of damages with his Rule 26 Initial Disclosures, he is precluded from seeking damages including any attorneys' fees." (<u>Id.</u> at 4).

Defendants are correct that Rule 26 indeed requires a party to disclose "a computation of each category of damages claims by the disclosing party," Fed. R. Civ. P. 26(a)(1)(A)(iii), but we fail to see the import of this requirement at the current stage of the litigation. Defendants cite to three cases in efforts to seemingly advance their suggestion that plaintiff is not entitled to a fee award because of incomplete Rule 26 disclosures. (Defs.' Mem. 3 (citing <u>Yong F. Ke v. 85 Fourth Avenue, Inc.</u>, 2009 WL 1058627 (S.D.N.Y. Apr. 20, 2009); <u>24/7 Records, Inc. v. Sony Music Entm't, Inc.</u>, 566 F. Supp. 2d 305 (2008); <u>Ng v. HSBC Mortg. Corp.</u>, 2008 WL 5274272 (E.D.N.Y. Dec. 18, 2008)). Yet, these cases only serve to emphasize that this point is something of a non-sequitur. Only one of these cases, <u>Yong F. Fe</u>, concerns the FLSA, and even

then, this particular decision related to a number of discovery disputes between some parties. 2009 WL 1058627 at *1. None of these cases concerns the viability of an application for attorneys' fees in light of allegedly defective Rule 26 disclosures, and our own search for any case on point was similarly unavailing.

The reason for the lack of relevant case law on defendants' argument is obvious: The remedy for a Rule 26 omission is properly sought via a Rule 37 motion to compel or an application for sanctions. See, e.g., Max Impact, LLC v. Sherwood Grp., Inc., 2014 WL 902649, *4-5 (S.D.N.Y. Mar. 7, 2014) (describing the requirements under Rule 26 and noting that "[a] party that fails . . . to comply with its disclosure obligations may be sanctioned under Rule 37"); Williams v. Boulevard Lines, Inc., 2013 WL 5652589, *3 (S.D.N.Y. Sept. 30, 2013) (same); Serin v. N. Leasins Sys., Inc., 2010 WL 6501664, *1 (S.D.N.Y. Oct. 26, 2010) (same).

If defendants wished to seek relief on the basis of plaintiffs' initial disclosures, they were certainly free to do so during the course of litigation. Indeed, as discussed, defendants did ask the court for an order to compel certain discovery, some of which related to plaintiff's damages, and which spurred letter-briefing and a ruling from Judge Castel. (See docket nos. 25, 29). If defendants found plaintiff's production lacking under this or

28

any other order, they were free to make whatever further
applications they deemed appropriate. Asking us now to preclude
plaintiff from recovering attorney's fees premised on his Rule 26
disclosures is too little, too late.

Moreover, it bears mentioning that the parties' settlement
agreement, which authorized a $7,500.00 payment to plaintiff,
plainly anticipated plaintiff's eventual application for fees.
(Joint letter dated November 24, 2014 [Docket no. 70]).
Furthermore, we point out that defendants provided us with a copy
of "Plaintiff's Objections and Responses to Defendants' First Set
of Interrogatories" (Ex. A to Declaration of Joseph M. Labuda,
Esq. ["Labuda Decl."]), a document that clearly provided, albeit
"for settlement purpose only," a calculation of damages for
plaintiff Ezekiel Gonzalez. (See id. at ¶ 4). Plaintiff also states
in his reply memorandum that, "following the initial disclosures,
Plaintiff did, on several occasions, including but not limited to,
in response to interrogatories and during . . . settlement
conferences, supplement disclosures by providing a computation of
damages to the Defendants." (Pl.'s Reply Mem. 4 n.2).

All this compounds the obvious point: There is no reason to
limit or preclude an award of fees based on plaintiff's allegedly
inadequate initial disclosures.

29

d. The Timing of the Settlement Agreement Does Not Affect
   the Outcome of Plaintiff's Fee Application

Defendants make one final argument separate and apart from
their assertions vis-à-vis the lodestar analysis itself, that "if
Plaintiff had indicated in his Complaint (or any other document)
that his damages were $7,500.00, Defendants would have settled
this case in the first week for nuisance value of $7,500.00 in
order to avoid the costs and expenses of litigation." (Defs.' Opp.
Mem. 2). Defendants accuse plaintiff's counsel of "unreasonably
extending this case" and "caus[ing] an excessive amount of unneeded
time to be spent on this case by Plaintiff's counsel, Defendants'
counsel and the Court." (Id. at 4). With this in mind, defendants
assert as follows:

> In considering this motion, the Court should look hard
> at how Plaintiff's counsel prosecuted this case and ask
> if Plaintiff's counsel should have settled such a small
> case earlier. If the answer is yes, then the Court should
> cut off all fees after the Court deems that Plaintiff's
> counsel should have settled the case.

(Id. at 5). Conveniently, "Defendants believe that this case should
have been settled before the Answer was even filed." (Id.).

Plaintiff responds that he "has properly and efficiently
litigated this case from its commencement." (Pl.'s Reply Mem. 3).
He goes on to state that

> [t]hroughout this litigation, Plaintiff had discussed the possibility of settlement with Defendants, and participated in two settlement conferences before the Court. Although "Defendants believe the case should have been settled even before the Answer was filed," that would have been unfair to the Plaintiff, who did not want to settle before providing other wronged employees the opportunity to participate in the case.

(Id. at 3-4 (quoting Defs.' Opp. Mem 5)). Finally, plaintiff writes that "[t]his is not the same situation as in other cases where Defendants . . . make Rule 68 offers of judgment . . . resulting in . . . it could be argued, less entitlement to the fees sought." (Pl.'s Reply. Mem 4).

We agree with plaintiff. To start, we note that the Second Circuit has emphasized that "[a] district court should not rely on informal negotiations and hindsight to determine whether litigation was warranted and, accordingly, whether attorney's fees should be awarded." Ortiz v. Regan, 980 F.2d 138, 140 (2d Cir. 1992); accord Raishevich v. Foster, 247 F.3d 337, 347 (2d Cir. 2001). Indeed, the Second Circuit goes on to frame this principle in a tone echoed in plaintiff's memorandum in reply:

> The availability of Rule 68 of the Federal Rules of Civil Procedure gives additional weight to this point. Rule 68 permits a party defending against a claim to make a settlement offer and thereby avoid any liability for costs, including attorney's fees, incurred after the making of the offer. [Defendants] could have made a formal offer of judgment pursuant to Rule 68 but chose not to use this procedure. Absent a showing of bad faith, "a party's declining settlement offers should [not] operate to reduce an otherwise appropriate fee award."

31

<u>Ortiz</u>, 980 F.2d at 141 (quoting <u>Cowan v. Prudential Ins. Co. of Am.</u>, 728 F. Supp. 87, 92 (D. Conn. 1990), <u>rev'd on other grounds</u>, 935 F.2d 522 (2d Cir. 1991)) (additional citation omitted).

While defendants ask us to reduce plaintiff's fee award because of his earlier declination to settle for a modest sum, "the judicial system does not require litigants to wager the ultimate value of their claims in such a way." <u>Harty v. Bull's Head Realty</u>, 2015 WL 1064630, *3 (D. Conn. Mar. 11, 2015) (citing <u>Ortiz</u>, 980 F.2d at 140-41 & <u>Cowan</u>, 728 F. Supp. at 92). Putting aside the lack of any indication that defendants even <u>offered</u> something approaching $7,500.00 early in the litigation -- via Rule 68 or otherwise -- defendants similarly fail to provide us with any facts even remotely suggesting that plaintiff was acting in bad faith, that he was needlessly stringing along this lawsuit, or that his attorneys were unreasonably delaying its resolution. We will certainly not invent such facts for purposes of this application. <u>Accord</u> <u>Siracuse</u>, 2012 WL 1624291 at *21 ("[F]or this Court to deny the plaintiff fees because she rejected defendant's settlement offer would be considered an abuse of discretion.") (citing <u>Ortiz</u>, 980 F.2d at 141); <u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527, 542 (S.D.N.Y. 2008) ("Nor is it appropriate to reduce the lodestar on the grounds that the plaintiff might have settled

earlier."); <u>Tlacoapa v. Carregal</u>, 386 F. Supp. 2d 362, 373-74 (S.D.N.Y. 2005) (finding, under <u>Ortiz</u>, that "no reduction is warranted" in FLSA plaintiff's counsel's fee award).

To conclude and further emphasize this point, we quote from the Second Circuit's decision in <u>N.A.A.C.P. v. Town of East Haven</u>:

> We hold that informal negotiations alone cannot establish bad faith for purposes of <u>Ortiz</u>. Otherwise, in attempting to limit fee awards, defendants could argue that informal negotiations in the run up to litigation show that the litigation was unnecessary and therefore in bad faith. Permitting such an argument to prevail would be precisely contrary to the purpose of <u>Ortiz</u>: to prohibit the use of informal negotiations as a basis for reducing fee awards in order to avoid just this sort of hindsight scrutiny of a litigant's tactical decisions that would "improperly dissuade []" "plaintiffs with meritorious claims . . . from pressing forward with their litigation."

259 F.3d 113, 120 (2d Cir. 2001) (quoting <u>Ortiz</u>, 980 F.2d at 140-41); <u>accord</u> <u>Siracuse</u>, 2012 1624291 at *21 n.18 ("Generally, however, where no Rule 68 offer has been made, 'the parties' positions during settlement negotiations should have no bearing on the Court's assessment of the degree of success or any other element of the fee award that plaintiff may be entitled to.'") (quoting <u>Rozell</u>, 576 F. Supp. 2d at 543).

II.  <u>Lodestar Analysis</u>

    a. <u>General Lodestar Standards</u>

We now turn to the heart of plaintiff's application for fees, which we assess via the long-recognized criteria under the rubric of a lodestar analysis. <u>See</u>, <u>e.g.</u>, <u>Kim v. Kum Gang, Inc.</u>, 2015 WL 3536593 (S.D.N.Y. June 5, 2015) (applying lodestar to an FLSA & NYLL fee application); <u>Local Union No. 40 of the Int't Ass'n of Bridge v. Car-Win Constr.</u>, __ F. Supp. 3d __, 2015 WL 690811, *28 (S.D.N.Y. Feb. 18, 2015); <u>Balestriere PLLC v. CMA Trading, Inc.</u>, 2014 WL 7404068, *3 (S.D.N.Y. Dec. 31, 2014); <u>Kim v. Kum Gang, Inc.</u>, 2014 WL 2514705, *1 (S.D.N.Y. June 2, 2014); <u>Archie Comic Publ'ns, Inc. v. Penders</u>, 2012 WL 3245421, *1-2 (S.D.N.Y. Aug. 6, 2012). This assessment results in a "presumptively reasonable fee," <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2007), which is "calculated by multiplying the number of hours reasonably billed . . . by the appropriate hourly rate." <u>In re Nortel Networks Corp. Secs. Litig.</u>, 539 F.3d 129, 132 n.4 (2d Cir. 2008); <u>accord</u> <u>Farmer v. Hyde Your Eyes Optical, Inc.</u>, 2015 WL 2250592, *14 (S.D.N.Y. May 13, 2015). While the resulting number "is not conclusive in all circumstances, . . . there is a 'strong presumption' that the lodestar figure is

34

reasonable." <u>Balestriere</u>, 2014 WL 7404068 at *3 (quoting <u>Perdue v.</u> <u>Kenny A.</u>, 559 U.S. 542, 552 (2010)).

Ultimately, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case," <u>Perdue</u>, 559 U.S. at 552, and "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." <u>Id.</u>

### b. <u>Hourly Rates</u>

#### i. <u>Introduction to Assessment of Hourly Rates</u>

Generally, to determine an appropriate hourly rate, the court looks to rates prevailing in the community "for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984); <u>accord</u> <u>Perdue</u>, 559 U.S. at 551 ("[I]n accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to the prevailing market rates in the relevant community."). As the Second Circuit has stated, "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." <u>Arbor Hill</u>, 522 F.3d at 190.

Plaintiff seeks fees for work done by six attorneys and four paralegals. (See Ex. A to Declaration of C.K. Lee, Esq. dated December 31, 2014 ["Lee Decl."]). These individuals bill their time at the following rates: (1) C.K. Lee, partner, $550.00 per hour; (2) Robert Kraselnik, partner, $550.00 per hour; (3) Anne Seelig, counsel, $350.00 per hour; (4) Shin Hahn, third-year associate, $250.00 per hour; (5) Diana Smithens, second-year associate, $200.00 per hour; (6) Shanshan Zheng, first-year associate, $175.00 per hour; (7) Allan Chang, paralegal, $130.00 per hour; (8) Christina Wu, paralegal, $125.00 per hour; (9) Jasmin Perez, paralegal, $125.00 per hour; and (10) Luis Arnaud, paralegal, $125.00 per hour. (Id.). Defendants oppose each and every one of the above rates (see Defs.' Opp. Mem. 5-10), and we will assess them for reasonableness one-by-one.

### ii. Our Assessment of the Cases Cited to Support Plaintiff's Counsel's Hourly Rates

Before turning to a discussion of whether these rates accord with "the prevailing market rates in the relevant community," Purdue, 559 U.S. at 551, we note that plaintiff's principal justification for the $550.00 rate for Mr. Lee -- and, to a less clear degree, the rates for his co-counsel, associates, and paralegals -- stems from a list of seven court decisions that

36

plaintiff paints as reflecting that "Mr. Lee's hourly rate of $550 has previously been approved in the Second Circuit in similar matters." (Pl.'s Mem. 6). Plaintiff cites the very same list in reply, to further emphasize that "the hourly rates charged by Plaintiff's counsel have been routinely approved in the Second Circuit." (Pl.'s Reply Mem. 6). He doubles down on this point and asserts that "in each of the class settlement cases cited by Plaintiff in its moving papers, Plaintiff had submitted separate motions for approval of attorneys' fees, with detailed records, all of which were approved by the Court." (Id. at 7).

In a declaration included with the application for fees, Mr. Lee also writes that he and Mr. Kraselnik have "been approved for an hourly rate of $550 in other FLSA settlements." (Lee Decl. ¶ 3). There, he cites another list of eleven cases, which includes the seven cited in plaintiff's memoranda and an additional four only mentioned in this paragraph of the declaration. (Id.). Finally, in his reply memorandum, plaintiff adds another two decisions, both from February 2015, that "approv[ed] Plaintiff's counsel's rates as reasonable." (Pl.'s Reply Mem. 6). All told, plaintiff provides us with thirteen purported examples of courts approving of Mr. Lee's rate of $550.00 per hour (and, again, to some nebulous degree, the rates of the other attorneys and

paralegals). As we will explain below, we find this proffer sorely lacking.

We begin with Romero v. La Revise Assocs., 58 F. Supp. 3d 411, 422-23 (S.D.N.Y. Nov. 12, 2014) ("Romero"), in which Judge Gorenstein approved a proposed FLSA class settlement that included a requested award of fees in the sum of $83,333.00. This amount reflected "approximately 33.3% of the $250,000 settlement fund amount." Id. at 422. We acknowledge that Judge Gorenstein, without explicitly discussing the respective attorneys' rates, referred to them as "reasonable." Id. at 423. However, importantly, counsel was not awarded a sum based on those rates. Id. The lodestar figure equaled $102,960.00, "which is well in excess of the $83,333 claimed under the percentage method." Id. We finally note with respect to this case that, in Mr. Lee's declaration to the court, he noted that he was seeking $550.00 per hour and asserted, as here, that counsel "has been approved for an hourly rate of $550 in other class action settlements." Romero, docket no. 85, ¶ 3. In the Romero declaration, Mr. Lee cited all of the same cases that he cites in the declaration submitted to us in support of the current motion (id.) -- except, of course, Romero itself.

Mr. Lee next relies on Lin v. Benihana Nat'l Assocs., L.L.C., 10-cv-1335 (S.D.N.Y., filed Feb. 18, 2010) ("Lin").[5] On June 27, 2014, Judge Francis granted the plaintiffs' unopposed request for approval of the FLSA settlement negotiated in that case. See id. at docket no. 230. This order, without reference to the reasonableness of hourly rates or any other aspect of the award, granted the plaintiffs $200,000.00 in attorneys' fees. Id. Via their submitted proposed order, the plaintiffs' had requested $250,000.00 in fees -- which Judge Francis reduced by endorsement to $200,000.00. Id. A reading of the memorandum submitted in support of the plaintiffs' application for fees in that case reveals what this figure represents. See Lin at docket no. 228. There, Mr. Lee writes as follows: "Multiplying these hours [presented in time-sheets to the court] by the hourly rate of each attorney and paralegal results in a lodestar amount of $415,164.45. Class Counsel's request for approximately 40% of the Settlement Fund -- $250,000 -- is significantly less than the 'lodestar.'" Id. Meaning, here, Mr. Lee is attempting to characterize a decision that awarded him less than half of the lodestar figure -- itself eventually cut down from what was requested -- as an illustration of an "approv[al] for an hourly rate of $550" (Lee Decl. ¶ 3), when, in Lee, Judge Francis did nothing of the sort.

---

[5] For organizational purposes, we are examining these cases in the order in which they are presented in Mr. Lee's declaration. (See Lee Decl. ¶ 3).

Before we move on to discuss the remaining cases, we also take the opportunity to note that, in the Lin declaration -- in what is emerging as a familiar pattern -- Mr. Lee cited seven of the cases he cites in the declaration submitted to us now (all except for Lin, Romero, and two other more recent decisions). Lin at docket no. 227, ¶ 3. As in Romero and as here, Mr. Lee cited these cases for the proposition that counsel had "been approved for an hourly rate of $550 in other class action settlements." Id.

Viafara v. MCIZ Corp., 2014 WL 1777438, *14 (S.D.N.Y. May 1, 2014) ("Viafara"), is perhaps the sturdiest leg upon which plaintiff can stand -- and even then, Mr. Lee is obviously stretching the bounds by his assertion that this case also reflects an "approv[al] for an hourly rate of $550." (Lee Decl. ¶ 3). In Viafara, it is true, Judge Ellis found the plaintiffs' requested rates of, inter alia, $550.00 for Mr. Lee to be "reasonable." 2014 WL 1777438 at *14. Yet, as in Romero and Lin, Viafara is another fees-as-percentage-of-the-fund case. See id. at *15. Judge Ellis awarded counsel fees of 33.3% of the settlement fund, which "represents about 1.6 times the lodestar," id., decidedly not an award of fees premised on multiplying Mr. Lee's asserted rate of $550.00 per hour by hours worked.

We are not going to scrutinize in comparable detail the remaining cases cited in Mr. Lee's declaration. Instead, we simply point out that not one of these eleven decisions resulted in a lodestar-calculated award of fees for Mr. Lee premised on his rate of $550.00 per hour. Not one. Instead, they are percentage-of-the-fund cases that Mr. Lee is attempting to pass off as approvals of this rate. Sierra v. Triple J. Assocs. of Queens, Inc., 14-cv-4462, docket no. 37, 42 (E.D.N.Y., filed Sept. 6, 2012) ("Sierra") (awarding $75,000.00 in fees, representing 33.3% of the settlement fund and more than the $58,880.00 lodestar figure); Khamsiri v. George & Frank's Japanese Noodle Rest., 12-cv-265, docket nos. 77-79 (S.D.N.Y., filed Jan. 13, 2012) ("Khamsiri") (awarding $100,000.00 in fees, representing 33.3% of the settlement fund and less than the $138,960.00 lodestar figure); Flores v. KC LLC, 12-cv-8095, docket nos. 83, 91 (S.D.N.Y., filed Nov. 11, 2012) ("Flores") (awarding $81,667.00, representing 33.3% of the settlement fund and less than the $84,012.00 lodestar figure); Sanjaya v. Inakaya USA, Inc., 12-cv-4500, docket nos. 99-100, 102 (S.D.N.Y., filed June 8, 2012) (awarding $50,000.00 in fees, representing 33.3% of the settlement fund and less than the $86,760.00 lodestar figure); Han v. AB Green Gansevoort, LLC, 11-cv-2423, docket nos. 98-99, 106 (S.D.N.Y., filed Apr. 8, 2011) (awarding $75,000.00 in fees, representing 33.3% of the settlement fund and more than the $55,437.50 lodestar figure); Marte v. Energy

41

Res. Pers., 11-cv-2490, docket nos. 39-40, 43 (S.D.N.Y., filed Apr. 12, 2012) ("Marte") (awarding $63,333.33 in fees, representing 33.3% of the settlement fund and more than the $47,685.00 lodestar figure); Han v. Sterling Nat'l Mortg. Co., 09-cv-5589, docket nos. 108-09, 116 (E.D.N.Y., filed Dec. 22, 2009) ("Han v. Sterling") (awarding $284,999.00 in fees, representing 36% of the settlement fund and more than the $237,435.00 lodestar figure); Amaya v. 166 Park Inc., 11-cv-1081, docket nos. 50-52 (E.D.N.Y., filed Mar. 7, 2011) ("Amaya") (awarding $43,333.33 in fees, representing 33.3% of the settlement fund and more than the "approximate" $36,000.00 lodestar figure).

The more recently decided cases, mentioned in plaintiff's memorandum in reply, are also so-postured. See Carillo v. 27-39 East 30 Rest. Corp., 13-cv-4491, docket no. 47-48, 61 (S.D.N.Y., filed June 28, 2013), ("Carillo) (awarding $83,333.00 in fees, representing 33.3% of the settlement fund and twice the $41,650.00 lodestar figure); Sanchez v. JMP Ventures, L.L.C., 2015 WL 539506, *5-6 (S.D.N.Y. Feb. 10, 2015) ("Sanchez") (awarding $53,333.00 in fees, representing approximately 33.3% of the settlement fund and somewhat more than the $47,655.00 lodestar figure).

We do not mean to suggest that these cases were decided improperly or that the fee awards were unreasonable. Rather, we

42

are only making the simple point that these cases do not represent what plaintiff or Mr. Lee states that they represent, that counsel "has been approved for an hourly rate of $550 in other FLSA settlements." (Lee Decl. ¶ 3).

Indeed, this point is made by Mr. Lee himself in each and every memorandum in support of approval of the respective fee awards in the above cases. In those briefs, he cites to Goldberger v. Integrated Res. Inc., 209 F.3d 43, 48-50 (2d Cir. 2000), and writes the same line, again and again and again: "While courts still use the lodestar method as a 'cross check' when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously." Romero, docket no. 84, p. 5; Lin, docket no. 228, p. 5; Viafara, docket no. 11, p. 5; Sierra, docket no. 37, p. 5; Khamsiri, docket no. 77, p. 5; Flores, docket no. 83, p. 5; Sanjaya, docket no. 99, p. 5; Han v. AB, docket no. 98, p. 5; Marte, docket no. 39, p. 5; Han v. Sterling, docket no. 109, p. 5; Amaya, docket no. 51, p. 5; Carillo, docket no. 24, p. 5; Sanchez, docket no. 49, p. 5. Yet, Mr. Lee turns around and, in this application premised squarely on examining the reasonableness of his requested lodestar, characterizes these cases as justifying a rate that, seemingly by his own admission, has not been "scrutinize[d] . . . rigorously." Id.

There is a larger point at issue here, however, which extends beyond the motion currently before us. Beginning with Sanjaya and moving forward in time, Mr. Lee has submitted declarations to judge after judge that, in pertinent part, are nearly identical versions of what he presents to us: a self-referential list of cases -- expanding with each victory -- that stands for the purportedly unqualified proposition that "Class Counsel has been approved for an hourly rate of $550 in other class action settlements." See Romero, docket no. 85, ¶ 3 (citing Lin, Viafara, Sierra, Khamsiri, Sanjaya, Han v. AB, Marte, Han v. Sterling, and Amaya); Lin, docket no. 227, ¶ 3 (citing Khamsiri, Flores, Sanjaya, Han v. AB, Han v. Sterling, and Amaya); Viafara, docket no. 112, ¶ 3 (citing Khamsiri, Flores, Sanjaya, Han v. AB, Marte, Han v. Sterling, and Amaya); Sierra, docket no. 38, ¶ 3 (citing Han v. AB, Marte, Han v. Sterling, Amaya, Khamsiri, and Flores); Khamsiri, 12-cv-265, docket no. 78, ¶ 3 (citing Han v. AB, Marte, Han v. Sterling, and Amaya); Flores, docket no. 86, ¶ 3 (citing Sanjaya, Han v. AB, Marte, Han v. Sterling, and Amaya); Sanjaya, docket no. 100, ¶ 3 (citing Han v. AB, Marte, Han v. Sterling, and Amaya); see also Carillo, docket no. 48, ¶ 3 (citing Lin, Viafara, Sierra, Khamsiri, Flores, Sanjaya, Han v. AM, Marte, Han v. Sterling, and Amaya); Sanchez, docket no. 52, ¶ 3 (citing Romero, Lin, Viafara, Sierra, Khamsiri, Flores, Sanjaya, Han v. AB, Marte, Han v. Sterling, and Amaya).

44

As reflected in our exploration of these cases, counsel has built himself a house of cards upon which he constructs one fee application after another. As currently framed, this list of decisions -- when presented in tandem with the characterization that it unqualifiedly reflects judicial approvals of counsel's hourly rate -- is, at best, a woefully inartful articulation of the state of this case law and, at worst, a blatantly self-interested misrepresentation to the court. These cases simply do not stand for the blanket appropriateness of a $550.00-per-hour rate for Mr. Lee and counsel would be well-advised to stop passing them off as such.

This is not to say that these decisions have no value for purposes of asserting the reasonableness of this rate. But a spade is a spade, and these cases reflect only the reasonableness of class-certified, unopposed, FLSA settlements that include fee awards as percentages of recovery approximating one-third of the settlement fund, some (but not nearly all) of which vaguely track a roughly undertaken lodestar analysis and most of which ended in the signing-off on judgments written by counsel themselves. A far cry from "approved for an hourly rate of $550." (Lee Decl. ¶ 3).

We note that plaintiff's counsel, albeit indirectly, has been chastised in this vein before, and fairly recently. See Ortiz v.

Chop't Creative Salad Co. LLC, __ F. Supp. 3d __, __, 2015 WL
778072, *19 (S.D.N.Y. Jan. 16, 2015). In Ortiz, Mr. Lee and his
firm -- including, in that case, Anne Seelig, Shin Hahn, and Jasmin
Perez -- litigated on behalf of a group of FLSA plaintiffs
alongside another plaintiffs' firm, Outten & Golden, LLP ("O&G").
2015 WL 778072 at *10. There, Judge Fox quoted, at some length, an
earlier decision by Judge Pauley that was written about yet a third
plaintiffs' FLSA firm and that we similarly reproduce here in its
entirety:

> [T]here is reason to be wary of much of the caselaw
> awarding attorney's fees in FLSA cases in this circuit.
> Struck by extreme similarities in the wording of several
> decisions, this Court discovered that many of the
> authorities cited by Plaintiff's counsel in support of
> their fee application are in fact proposed orders
> drafted by the class action plaintiffs' bar and entered
> with minimal, if any, edits by judges. Indeed, [in] each
> of the four decisions[] mentioned [in this case], the
> same authorities Plaintiffs cited in their brief, were
> proposed orders making findings of fact and conclusions
> of law drafted by plaintiffs' counsel requesting their
> own fees . . . Orders drafted by counsel, especially
> those making findings of fact and conclusions of law
> that award counsel their own fees, should be given little
> precedential value. By submitting proposed orders
> masquerading as judicial opinions, and then citing to
> them in fee applications, the class action bar is in
> fact creating its own caselaw on the fees it is entitled
> to. Because Westlaw and Lexis sweep every order of any
> significance into their databases, these form orders
> appear as if they were decisions by the judges who signed
> them. No wonder that "caselaw" is so generous to
> plaintiffs' attorneys.

Id. at *19 (quoting Fujiwara v. Sushi Yasuha Ltd., 58 F. Supp. 3d
424, 436 (S.D.N.Y. 2014)). In Ortiz, Judge Fox added that "in the

plaintiffs' memorandum of law in support of the fee application, counsel relies and makes citation, almost exclusively, to their own previous cases." 2015 WL 778072 at *19. Admittedly, most of the nine cases cited and summarized concerned O&G, not Lee Litigation Group. But the similarities between the applications faced by Judges Fox and Pauley are startling -- and, as co-counsel to O&G in Ortiz, Mr. Lee was surely aware of that court's skepticism with seeking fees in this fashion. "The Court notes that the practice of plaintiffs' counsel about which the Fujiwara court was wary" -- and about which the Ortiz court was concerned -- "is also present here, and the Court is similarly wary of it." Ortiz, 2015 WL 778072 at *19.

In wagging our finger as we do, we emphatically dispel any implication that these FLSA plaintiffs' firms are not the able advocates we know them to be, who do beneficial -- and often quite successful -- work on behalf of civil rights litigants. However, they should not have to hide the ball on the state of the law to seek reasonable compensation for their worthy efforts.[6]

---

[6] We take the opportunity here to briefly address the repeated policy arguments made by plaintiff for why we should not reduce the award from what they seek. (See, e.g., Pl.'s Mem. 5, 8; Pl.'s Reply Mem. 4-5). In sum, plaintiff invokes the remedial purposes of the FLSA and argues that "[f]ailure to award Plaintiff's Counsel's fees and expenses in their entirety would deter qualified counsel from accepting single plaintiff claims." (Pl.'s Mem. 5). Still, "[t]he danger to workers from underpayment by their employers is clear. The danger of overpaying their lawyers is more subtle." Fujiwara, 58 F. Supp. 3d at 429. We believe a careful lodestar analysis is sufficient to incentivize able efforts on behalf of the former and fairly adjudicate the fees of the latter.

Accordingly, we set aside the above list of cases and analyze the reasonableness of counsel's rates the old fashioned way, by ascertaining whether they are appropriate given the rates prevailing in the community "for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum, 465 U.S. at 895 n.11, and "the prevailing market rates in the relevant community." Perdue, 559 U.S. at 551.

### iii.  Assessment of the Requested Hourly Rates

We begin our assessment of the requested hourly rates with that of Mr. Lee, who obtained his Juris Doctorate from the University of Pennsylvania Law School in 1997 and admission to the New York bar in 1998. (Lee Decl. ¶ 2). He is a member-in-good-standing of the bar of that state, as well as the bars of the Second Circuit and the Eastern and Southern Districts of New York. (Id.). He writes that "[p]rior to establishing my own firm, I was associated with some of the top firms in New York City, including Clifford Chance, Morrison & Foerster and Schulte Roth & Zabel." (Id.).

Since 2009, Mr. Lee has assertedly "been engaged primarily in prosecuting wage and hour individual and class and collective action cases" (id.), a representation reflected in plaintiff's

48

memorandum in support of the fee application, which states that "C.K. Lee has substantial experience practicing law, and has recognized experience in employment law." (Pl.'s Mem. 6; see also id. ("Mr. Lee has litigated hundred[s] of cases within the labor law context, and has argued before the Court of Appeals on FLSA matters.")).

Mr. Lee argues that his "rate is in line with the prevailing market rates today for a private attorney within the Southern District of New York with specialized knowledge in employment law." (Pl.'s Mem. 6). In so arguing, he cites to Rozell v. Ross-Hoist, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008), a case that we acknowledge awarded $600.00-an-hour to partners litigating an employment discrimination suit. We will also go so far as to point out that we recently cited this very case to award $600 an hour to a partner who assisted in the litigation of an FLSA case. See Kim, 2015 WL 3536593 at *2 n. 16. There, we noted that "in 2012 a court in this district approved a $550.00 rate for a mid-size firm partner in an FLSA case (Outten & Golden) . . . and the Second Circuit subsequently affirmed that decision." Id. (citing Torres v. Gristede's Operating Corp., 2012 WL 3878144, *3-4 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 F. App'x 1, 3-4 (2d Cir. 2013)).

Nevertheless, we also said there, and we reiterate here, "that several courts have deemed a top rate of $450.00 as the maximum for a senior law firm attorney in FLSA type cases." Kim, 2015 WL 3536593 at *2 n. 16 (citing Gurung v. Malhotra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (citing cases); Easterly v. Tri-Star Transp. Corp., 2015 WL 337565, *10 (S.D.N.Y. Jan. 23, 2015); Aguilera, 2014 WL 2115143 at *3). We stated that "a $600-per-hour rate is beyond that which is typical for FLSA litigators in this district," Kim, 2015 WL 3536593 at *2 n. 16, and believe the same to be true of $550.00-per-hour rates.

In Kim, the attorney for whom we had approved $600.00 per hour worked for Shearman & Sterling, which we noted "has a more substantial overhead than other small or midsize plaintiffs' firms litigating FLSA cases." Id. Moreover, that particular fee application was unopposed, id., which is certainly not the case with respect to the motion before us now. Finally, to the degree that it colors the rates warranted in any particular case, plaintiffs' counsel in Kim achieved remarkable success on behalf of their clients -- in a multi-plaintiff FLSA case significantly more complex than this –- that is, a bench-trial judgment in excess of $2.5 million, Kim, 2015 WL 2222428 at *45, which is in stark contrast to the $7,500.00 settlement achieved by plaintiff's counsel here. (See Defs.' Opp. Mem. 4).

Moreover, a number of fairly recent decisions in this district have specifically reduced Mr. Lee's requested hourly rate of $550.00 per hour for purposes of lodestar. See, e.g., Trinidad v. Pret a Manger (USA) Ltd., 2014 WL 4670870, *9 (S.D.N.Y. Sept. 19, 2014) ("Mr. Lee's reported billing rate of $550 per hour is higher than the norm, which, for wage-and-hour cases in this District, appears to be between $300 and $400 per hour.") (citing cases and reducing the rate to $400.00 per hour); Aguilera, 2014 WL 2115143 at *3-4 (referring to Mr. Lee's rate of $550.00 as "unacceptably high" and awarding $350.00 per hour); Agudelo v. E & D LLC, 2013 WL 1401887, *2 (S.D.N.Y. Apr. 4, 2013) ("At $550 per hour, [Mr. Lee's] quoted rates are disproportionately large compared to the rates charged by comparable employment law attorneys.") (citing cases and reducing the rate to $350.00 per hour).

Given this case law and "[i]n view of the ample supply of experienced attorneys in this community who specialize in work of this type -- specifically, wages-and-hours-litigation . . . -- and who charge considerably lower rates, we view these figures as not reflecting 'the rate[s] a paying client would be willing to pay.'" Kim, 2014 WL 2514705 at *2 (quoting Arbor Hill, 522 F.3d at 190).

This observation is equally true for the rate requested for Mr. Robert Kraselnik, who litigated this action in tandem with Mr.

Lee's firm (See Lee Decl. ¶ 1) and for whom plaintiff also seeks $550.00 per hour. (Ex. A to Lee Decl.). Unlike for Mr. Lee, we are not provided information about Mr. Kraselnik's background via declaration or other evidentiary proffer. Still, plaintiff's memorandum of law informs us that, as "owner of the Law Offices of Robert L. Kraselnik, PLLC," Mr. Kraselnik is "highly experienced in wage and hour litigation under the Fair Labor Standards Act and the New York Labor Law." (Pl.'s Mem. 7). In an exhibit attached to Mr. Lee's declaration, plaintiff styles Mr. Kraselnik as a "Partner" (Ex. A to Lee Decl.), and, via the memorandum, represents that he "concentrates his practice in this area and has litigated hundreds of wage and hour actions including class and collective actions." (Pl.'s Mem. 7).[7]

Defendants argue that "a rate of no more than $150-250/hour is more than fair for a practitioner with the experience and case handling skills of Lee and Kraselnik." (Defs.' Opp. Mem. 8). We do not go so far. However, given, inter alia, typical wage-and-hour litigation fee awards in this district, the likely overhead burdens of Messers. Lee and Kraselnik, the lack of novelty and complexity

---

[7] It is defendants who fill in the blanks, informing the court that Mr. Kraselnik "is a sole practitioner and graduated law school in 1997." (Defs.' Opp. Mem. 7). We also note that a fairly recent case out of the Eastern District found that "Robert L. Kraselnik has worked on hundreds of labor-law related cases." Hernandez v. Prof'l Maint. & Cleaning Contractors Inc., 2015 WL 128020, *8 (E.D.N.Y. Jan. 18, 2015). In that decision, Mr. Kraselnik's rate was reduced from the requested $550.00 per hour to $350.00.

of this fairly standard FLSA action, and the backgrounds and experience of these two attorneys, we will apply a rate of $450.00 per hour -- which we note is still at the high end of that which is generally granted in this district.

We next turn to the rate requested for Ms. Anne Seelig. Plaintiff informs us that she "is Counsel to LLG and has ten years experience practicing law" and seeks $350.00 per hour for her efforts. (Pl.'s Mem. 6).[8] We note that "courts in this district have found that $300 is an appropriate hourly rate for a senior associate with at least eight years' experience." Black v. Nunwood, Inc., 2015 WL 1958917, *6 (S.D.N.Y. Apr. 30, 2015) (citing cases). Thus, while the requested rate for Ms. Seelig is high, it is not unreasonably so. Consequently, plaintiff's requested rate of $350.00 per hour for Ms. Seelig is approved.

The remaining requested rates -- $250.00 for a third-year associate, $200.00 for a second-year associate, $175.00 for a first-year associate, and $125.00-$130.00 for paralegals -- "are higher than the norm in this district." Id. Generally, rates in excess of $225.00 per hour are reserved for FLSA litigators with more than three years' experience. See, e.g., id.; Boutros v. JTC

---

[8] While plaintiff does not provide us with any further biographical information for Ms. Seelig, in Ortiz, Mr. Lee reported that she is "a 2003 graduate of New York Law School admitted to the New York bar in 2004." 2015 WL 778072 at *10.

Painting and Decorating Corp., 2014 WL 3925281, *6 (S.D.N.Y. Aug. 8, 2014) (approving rates of $250.00 per hour for associates who, at the start of the suit, had between three and six years' experience) Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp., 2014 WL 2624759, *7 (S.D.N.Y. June 10, 2014) (noting that partner rates for FLSA attorneys start at $300.00 per hour); Agudelo, 2013 WL 1401887 at *2 (discerning "no reason to deviate from the market rate for the services of comparable junior associates -- $200 per hour"); Wong v. Hunda Glass Corp., 2010 WL 3452417, *3 (S.D.N.Y. Sept. 1, 2010) (noting that "civil rights and employment law litigations with approximately ten years' experience" warrant rates starting at $250.00 per hour).

We finally note -- without delving too deeply into the topic -- that courts are generally more skeptical of requested hourly rates when the applicant fails to provide information about the backgrounds of the relevant attorneys and paralegals. Accord Black, 2015 WL 1958917 at *6; Santiago v. Coco Nail HB, Inc., 2012 WL 1117961, *4 (E.D.N.Y. Mar. 16, 2012); Spalluto v. Trump Int'l Hotel & Tower, 2008 WL 4525372, *14 (S.D.N.Y. Oct. 2, 2008); Tlacopa, 386 F. Supp. 2d at 370; see also Texas v. New Mexico, 475 U.S. 1004, 1004 (1986) (C.J. Burger, dissenting). Plaintiff's counsel having failed to submit any such information for most of those for whom plaintiff is seeking fees, we are in no position to

determine whether, and to what degree, the unique skills or experience of an attorney or paralegal weighs in favor of deviating from the norms governing reasonable rates.

Accordingly, we will approve the following rates for these individuals:

- Shin Hahn, third-year associate, $200.00 per hour.
- Diana Smithens, second-year associate, $175.00 per hour.
- Shanshan Zheng, first-year associate, $150.00 per hour.
- Allan Chang, paralegal, $105.00 per hour.
- Christina Wu, paralegal, $100.00 per hour.
- Jasmin Perez, paralegal, $100.00 per hour.
- Luis Arnaud, paralegal, $100.00 per hour.

### c. The Amount of Compensable Time

In determining how much attorney time should be compensated, the court initially looks to the amount of time spent on each category of tasks, as reflected in contemporaneous time records. E.g., Kim, 2015 WL 3536593 at *3; Malletier v. Dooney & Bourke, Inc., 2007 WL 1284013, *1 (S.D.N.Y. Apr. 24, 2007) (citing New York Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1142-43, 1147 (2d Cir. 1983)); see also Rosendo v. Everbrighten Inc., 2015 WL 1600057, *9 (S.D.N.Y. Apr. 7, 2015). It then must determine how much of that time was "reasonably expended." Malletier, 2007 WL 1284013 at *1 (internal quotations omitted);

see also Briese Lichttechnik Vertriebs GmbH v. Langton, 2010 WL 3958737, *1 (S.D.N.Y. Oct. 4, 2010). To do so "the court looks to its own familiarity with the case and . . . its experience generally as well as to the evidentiary submissions and arguments of the parties." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotations omitted); see also Saks Inc. v. Attachmate Corp., 2015 WL 2358466, *4 (S.D.N.Y. May 15, 2015).

This analysis takes into consideration overstaffing, the skill and experience of the attorneys, as well as redundant, excessive, or unnecessary hours. Clarke, 960 F.2d at 1153. The court must consider the "contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done," Carey, 711 F.2d at 1148, and is required to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). In calculating reasonable hours, the essential consideration is whether a reasonable attorney would have expended similar hours in pursuit of the case. See, e.g., Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

If the court finds that some of the time spent was not reasonably necessary to the outcome, it should reduce the time for which compensation is awarded. See, e.g., Hensley, 461 U.S. at 433-37; Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998). Such reductions are appropriate not only for work on unsuccessful claims and arguments, but also for inefficient or duplicative work. See Hensley, 424 U.S. at 434-35; In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987). "In reducing a claim for time spent, the court may 'use a percentage deduction "as a practical means of trimming fat from a fee application."'" Malletier, 2007 WL 1284013 at *1 (quoting McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006)).

In this case, plaintiff has documented, and seeks reimbursement for, 249.1 attorney and paralegal hours. (See Pl.'s Mem. 3; Ex. A to Lee Decl.). Once we account for the number of hours spent on the unsuccessful motion for class certification and the discovery extension request, see supra pp. 14, 26, the total sought-after number of hours is 179.5. Having examined the remainder of the time-sheets, we determine that, while an across-the-board, 10% reduction in hours is appropriate for Mr. Lee,[9] the

---

[9] Mr. Lee's time-sheets reflect, inter alia, six hours spent on December 19, 2013 "prepar[ing] for depositions" (Ex. A to Lee Decl.), by which he appears to mean for a single 30(b)(6) deposition, that itself only lasted for 4.2 hours.

amount of hours expended by the other attorneys and paralegals is
not unreasonable.[10]

### d. Final Lodestar Calculations

Given the above considerations, we make the following awards
to plaintiff:

- C.K. Lee            $22,599.00  (50.22[11] hours/$450 per hour)
- Robert Kraselnik    $7,650.00   (17 hours/$450 per hour)
- Anne Seelig         $4,410.00   (12.6[12] hours/$350 per hour)
- Shin Hahn           $5,600.00   (28 hours/$200 per hour)
- Diana Smithens      $1,487.50   (8.5 hour/$175 per hour)
- Shanshan Zheng      $450.00     (3 hours[13]/$150 per hour)

---

[10] (Id.). He also spent 7.8 hours preparing his own client for a deposition and
appears to have spent upwards of 5.5 hours "comment[ing]" about a reply
memorandum drafted during the briefing of the conditional-certification motion.
(Id.).

[10] Defendants target a number of entries, aside from those related to time spent
by Mr. Lee, as "too general" and "lack[ing in] any sense of detail." (Defs.'
Opp. Mem. 13). We do not agree, however, that it is "impossible for this Court
to determine the purpose of . . . these tasks." (Id. at 14). For example, Mr.
Kraselnik indeed spent a number of hours "Prepar[ing] Complaint" and Ms. Perez
does appear to have worked for nearly three hours, over three days, putting
together plaintiff's "discovery package." (Ex. A to Lee Decl.). However, Mr.
Kraselnik was the only attorney to have worked on the complaint and Ms. Perez
is the only paralegal to have compiled that round of discovery -- tasks integral
to the life of a lawsuit and about which even terse memorializations in time-
sheets are sufficiently comprehensible by a reviewing court.

[11] This accounts for both the striking of hours associated with the motion for
class certification and the subsequent, 10% across-the-board trimming.

[12] This accounts for both the striking of hours associated with the motion for
class certification and the striking of hours associated with the discovery
extension request. This number also includes the reasonable amount of time spent
on reviewing defendants' opposition to this motion and drafting plaintiff's
reply. (See Pl.'s Reply Mem. 9). We finally note that, with respect to Ms.
Seelig, there is an apparent error in the "Time Sheet Summary" provided amid
the exhibits to Mr. Lee's declaration. (See Ex. A to Lee Decl.). While the total
number of hours expended by Ms. Seelig -- as reflected in the time sheets
themselves -- is 19.8, the summary states that Ms. Seelig spent only 16 hours
on this litigation. (Id.). We utilize the former figure for purposes of
calculating the ultimate number of hours worked.

[13] This accounts for the hours spent on the motion for class certification.

```
    - Allan Chang        $630.00     (6 hours/$105 per hour)
    - Cristina Wu      $1,200.00    (12 hours/$100 per hour)
    - Jasmin Perez     $2,830.00    (28.3[14] hours/$100 per hour)
    - Luis Arnaud      $1,510.00    (15.1 hours[15]/$100 per hour)
                       _____
            Total      $48,366.50
```

## III. <u>Disbursements</u>

Plaintiff also asks to be compensated for $1,150.60 in disbursements, representing a court filing fee ($350.00), transcription ($371.00), mailing costs ($105.35), transportation ($97.00), and other sorts of expenses that attorneys would "ordinarily charge[] to their clients." <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 763 (2d Cir. 1998).[16] (<u>See</u> Ex. A to Lee Decl.).

As is typical for this motion, defendants fight plaintiff on their expenses tooth-and-nail. (Defs.' Opp. Mem. 14-15). They write that "Plaintiff fails to provide invoices detailing the actual cost associated with these activities. Plaintiff merely provides the Court with a list and expects the Court to believe

---

[14] This accounts for the fraction of the hour spent on the discovery extension request.

[15] This accounts for the hour spent on the motion for class certification.

[16] Although <u>LeBlanc-Sternberg</u> was applying 42 U.S.C. § 1988 in assessing the reimbursement of litigation disbursements, <u>LeBlanc-Sternberg</u>, 143 F.3d at 763, the same standards are routinely applied in lawsuits under the FLSA. <u>See</u>, <u>e.g.</u>, <u>Cesario v. BNI Constr., Inc.</u>, 2008 WL 5210209, *10 (S.D.N.Y. Dec. 15, 2008).

those costs as true." (<u>Id.</u> at 15). Defendants also state that "Plaintiff failed to provide the names of the parties who were deposed which required the court reporting and has not provided to where or when the transportation was necessary." (<u>Id.</u>). Defendants conclude by asserting that "[i]t is unfathomable for Defendants to know which deposition costs correlate with the party that was deposed and why the other costs were incurred" and insists that "Plaintiff's litigation costs are not well documented and must be reduced." (<u>Id.</u>).

Plaintiff replied by proffering receipts documenting transportation and deposition costs (<u>see</u> Ex. A to Pl.'s Reply Mem.), which more than satisfies the court as to the propriety of hir requested award of disbursements.[17]

## CONCLUSION

For the reasons stated, plaintiff's motion for an award of fees and disbursements is granted to the extent that they are

---

[17] We also note that, although "[w]here an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award costs," <u>Savarese v. Cirrus Design Corp.</u>, 2010 WL 532289, *7 (S.D.N.Y. Feb. 8, 2010), it is equally true that "where plaintiff's counsel . . . limit[s] expenses . . . and there is no doubt that there were legitimate expenses in th[e] case, the Court [may] exercise its discretion [and award costs]." <u>Zimmerman v. Portfolio Recovery Assocs., LLC</u>, 2013 WL 6508813, *13 (S.D.N.Y. Dec. 12, 2013) (internal quotations omitted) (citing cases).

awarded   $48,366.50   in   attorneys'   fees   and   $1,150.60   in
disbursements.


**Dated:**      **New York, New York**
            **June 12, 2015**

_____

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**




Copies of the foregoing order have been sent by mail to:

**Anne Melissa Seelig, Esq.**
**C.K. Lee, Esq.**
Lee Litigation Group, PLLC
30 East 39th Street
2nd Floor
New York, NY 10016

**Robert Louis Kraselnik, Esq.**
Law Offices of Robert L. Kraselnik, PLLC
271 Madison Ave
Suite 1403
New York, NY 10016

**Joseph Martin Labuda, Esq.**
**Matthew Alexander Brown, Esq.**
Milman Labuda Law Group PLLC
3000 Marcus Avenue
Lake Success, NY 11042